J. Scott Detamore, Esq.                    Jodi A. Darrough
Mountain States Legal Foundation Attorney  Deputy County & Prosecuting
2596 South Lewis Way                       450 North Second Street, Room 107
Lakewood, Colorado 80227-2705              Lander, Wyoming 82520
303 292 2021                               307 332 1162
303 292 1980 (fax)                         307 332 1029 (fax)

Richard Rideout, Esq.
Law Offices of Richard Rideout, P.C.
211 West 19th Street, Suite 100
P.O. Box 389
Cheyenne, Wyoming 82003-0389
307 632 1901

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

JAMES E. LARGE, *et al.*,          )
                                   )
    Plaintiffs,              )
                                   )
vs.                                )          Case No. 05-CV-270J
                                   )
FREMONT COUNTY, WYOMING, *et al.*, )
                                   )
    Defendants.               )

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR COSTS AND ATTORNEY'S FEES

COME NOW, the Defendants, Board of County Commissioners of Fremont County, Wyoming in their official capacities and Julie Freese in her official capacity ("Defendants" or as individually identified), by and through their counsel, Richard Rideout, Esq., of the Law Offices of Richard Rideout, PC, Cheyenne, Wyoming, and submits their Response in Opposition to Plaintiffs' Motion for Costs and Attorney's Fees.

1

The Defendants agree that the Plaintiffs are the prevailing parties in this lawsuit and are entitled to their reasonable costs and attorney's fees pursuant to 42 U.S.C. §§ 1973(e) and 1988.   Further, the Defendants agree that there are no special circumstances that exist that would render an award in and of itself unjust.   However, the Defendants object to the hourly rates being sought by the attorneys and to some of the actual time and expenses being requested.

**I.    Reasonable Attorney Fees**

[T]he primary concern with respect to attorneys' fees is that the fee awarded be reasonable. *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999). A reasonable fee is one that attracts competent counsel but avoids producing a windfall. *Id.*

In determining what is a reasonable amount of attorneys' fees, a useful starting point is to determine the "lodestar," which is calculated by multiplying the proven number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.; see also Isabel v. City of Memphis,* 404 F.3d 404, 415 (6th Cir.2004).

When a court is calculating the lodestar, the party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates claimed. *Granzeier v. Middleton,* 173 F.3d 568, 577 (6th Cir.1999) (citing *Hensley,* 461 U.S. at 433). The reasonableness of a claimed hourly rate is determined by reference to the prevailing rate in the relevant market- *i.e.,* the rate that is customarily paid in the community to attorneys of reasonably comparable skill, experience, and reputation-regardless of whether

plaintiff is represented by private or nonprofit counsel. *See Johnson v. City of Clarksville,* 256 Fed. Appx. 782, 783 (6th Cir.2007) (citing *Blum v. Stenson,* 465 U.S. 886, 895-96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)); *see also Fuhr v. Sch. Dist. of Hazel Park,* 364 F.3d 753, 762 (6th Cir.2004). In this regard, the Sixth Circuit specifically has found that the relevant market is "the venue of the court of record," rather than a foreign counsel's "geographical area wherein he maintains his office and/or normally practices." *Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir.2000). Moreover, the hourly rate "should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Reed,* 179 F.3d at 472 (quoting *Coulter v. Tennessee,* 805 F.2d 146, 149 (6th Cir.1986)). As the Sixth Circuit has stated, under the federal civil rights fee shifting statutes:

> [Attorneys'] fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $ 250 an hour in a field in which competent and experienced lawyers in the region normally receive $ 85 an hour should be compensated at the lower rate.

*Id.* at 472-73 (quoting *Coulter,* 805 F.2d at 149). And finally, in exercising its discretion to determine a reasonable hourly rate, a district court may consider a party's submissions (e.*g.,* affidavits or declarations from other attorneys or experts), awards in analogous cases, state bar association guidelines, and its own knowledge and experience from handling similar requests for fees. *See Johnson v. Connecticut Gen. Life Ins., Co.,* No. 5:07-CV-167, 2008 U.S. Dist. LEXIS 24026, at *14 (N.D. Ohio Mar. 13, 2008); *Mikolajczyk v. Broadspire Servs., Inc.,* 499 F.Supp.2d 958, 965 (N.D.Ohio 2007); *Barrett v. Detroit Heading, LLC,* No. 05-72341, 2007 U.S. Dist. LEXIS 41555, at *25-26 (E.D. Mich. June 7, 2007); *Ousley v. Gen.*

> *Motors Ret. Program for Salaried Employees,* 496
> F.Supp.2d 845, 850 (S.D.Ohio 2006) (citing *Coulter,*
> 805 F.2d at 149-50).

*Project Vote v. Blackwell*, 2009 WL 917737, 4-5 (N.D. Ohio 2009).
The Plaintiffs' attorneys claim that that they should be awarded
their out-of-town rates because there were no other attorneys in
the Wyoming area that would have been willing or had the
expertise to litigate a vote dilution case. However, there been
been attorneys in Wyoming that have litigated voting rights
cases in the form of the districting and redistricting in
Wyoming and while not exactly the same as the instant case, it
too presented novel, complex, and difficult issues of fact and
law and there was competent Wyoming counsel representing both
the plaintiffs and the state. *Gorin v. Karpan*, 775 F.Supp. 1430
(Wyo. 1991); *Gorin v. Karpan*, 788 F.Supp. 1199 (Wyo. 1992).
Additionally, Mr. Speight believes that there are competent
attorneys in Wyoming that could have handled the case, including
Steve F. Freudenthal and Ford T. Bussart, who represented the
plaintiffs in the redistricting cases, *Gorin v. Karpan*.
(Speight Declaration).

The Plaintiffs also need to show that "in spite of his
diligent, good faith efforts, he was unable to find local

counsel able and willing to take the case." *Emery v. Hunt*, 272 F.3d 1042 (8th Cir. 2001).  However, in this case the Plaintiffs make no such assertion.  The Plaintiffs only claim that they did not have the financial resources to hire counsel and were unaware of any local or in-state counsel who specialize in minority vote dilution cases.  Additionally, the Defendants are unaware that the requirement is that the plaintiff be able to find a specialist in the specific area of law, only that they were unable to find counsel in the local or in-state area willing to take their case.  Plaintiff Collins affidavit does not even assert that they attempted to find any sort of local counsel.  Further, Baldwin, Crocker & Rudd, P.C. were not even approached until after the ACLU had taken the case.  *Emery v. Hunt*, 236 F.Supp.2d 1033, 1038 (D.S.D. 2002).

Mr. Laughlin has argued that he has been awarded $400.00 in attorney fees in prior cases.  However, Mr. Laughlin has also had his fee request reduced to $150.00 an hour and Mr. Sells a fee of $125.00 in a voter litigation case as well.  *Emery*, 236 F.Supp.2d 1033.

Mr. Laughlin also argues that Wyoming has recently awarded a $400 per hour fee.  *Ultra Resources, Inc. v. Hartman*, 226 P.3d

889 (Wyo. 2010).  However, in that case the Plaintiffs'
attorneys had actually billed the Plaintiffs $5 million in
attorney fees but were only requesting just over $3.9 million.
Additionally, the attorneys that did charge $400 per hour did
not charge that hourly rate throughout the whole litigation.
And more importantly, as was pointed out by the Plaintiffs
themselves, this was an oil and gas litigation which had the
potential to generate significant monetary impacts, not a voting
rights issue.

For the above stated reasons, the Plaintiffs' attorney's
fee should be based on the venue of the court, which is Wyoming.
Experienced Wyoming counsel practicing in the federal courts of
Wyoming charge within a range of $250.00 to $300.00 per hour for
complex and difficult federal trial work and it is in this range
that Laughlin McDonald, Bryan Sells, and Meredith Bell should be
allowed as a reasonable fee.  (Speight Declaration).

As far as Baldwin, Crocker, Millard, and Schnieder, the
average rate charged in Fremont County is between $135.00 and
$200.00 per hour based on the undersigned's investigation of the
same.  In addition, of course, the local counsel's hourly rate
should be reduced proportionately in relation to the reduction

of Mr. McDonald's rates.  Further, after a review of their
hours, the majority of their tasks are reviewing documents
already produced by Mr. McDonald and doing very limited
research.  As local counsel and not major contributors to the
case, a fee set within this range for Andrew Baldwin, Berthenia
Crocker, Christopher Schneider, and Janet Millard would be
reasonable.  See *Williams v. Board of Com'rs of McIntosh County*,
938 F.Supp. 852 (S.D.Ga. 1996).

**II.  Reasonable Hours**

"[T]he amount of attorneys' fees awarded is at the trial
court's discretion. *See Dotson v. Pfizer, Inc.* 558 F.3d 284, 303
(4th Cir.2009)."  *DeFreitas v. Horizon Inv. & Management Corp.*,
2010 WL 2901616, 2 (D.Utah 2010).

a. Duplicative Work

While it is reasonable for more than one plaintiff attorney
to be working on the case at one time, if the hours are
duplicative, then the Court may reduce attorney hours.  "[T]here
is nothing inherently unreasonable about a client having
multiple attorneys, and they may all be compensated if they are
not unreasonably doing the same work and are being compensated
for the distinct contribution of each lawyer. *Id.*"  *Anchondo v.*

7

*Anderson, Crenshaw & Associates, L.L.C.*, 616 F.3d 1098, 1105 (10th Cir. 2010).

The Defendants contend that more than one attorney at depositions, interviews, and conferences with clients is unreasonable, unproductive, and duplicative and therefore the additional attorney's times, who did not participate in the events, should be disallowed.  The Defendants also contend that Mr. Baldwin's or Ms. Crocker's presence at the trial was unreasonable, unproductive, and duplicative.  Neither attorney ever questioned a witness and Mr. McDonald, Mr. Sells, and Ms. O'Connor (Mr. McDonald's paralegal) were all in attendance throughout the trial.  Therefore Baldwin's and Crocker's time at trial, as well as traveling time to and from the trial and reimbursement traveling expenses, should be disallowed. Additionally, the Defendants contend that the presence of Baldwin, Crocker, and Millard at the hearing in July 2010 regarding the remedy phase was unreasonable, unproductive, and duplicative and the time should be disallowed, as well as the traveling time and reimbursement traveling expenses incurred for the same.  Following is a list of hours that the Defendants contend were duplicative and therefore, should be disallowed.

8

| | |
|---|---|
| 7/12/05 | Baldwin, Crocker, and Schneider all participated in conference call with McDonald.  It is the Defendants' contention that not all three attorneys were needed to participate in the conference call with McDonald and at least 2 hours should be disallowed.  (District Court Document 158-15, pg. 6; 158-2, pg. 2). |
| 4/12/06 | McDonald, Crocker, and Baldwin all attended an interview with Vincent.  It is the Defendants' contention that McDonald could have conducted this interview alone and that at least 3 hours should be disallowed.  (District Court Document 158-15, pgs. 11-12). |
| 8/2/06 | McDonald and Baldwin both attended the Thompson deposition.  It is the Defendants contention that McDonald was the only one that participated in the deposition and therefore at least 1.4 hours should be disallowed.  (District Court Document 158-15, pg. 13). |
| 8/23/06 | Bell, Crocker, and Baldwin all attended depositions.  It is the Defendants contention that Bell was the only one that participated in the deposition and therefore at least 2.5 hours should be disallowed.  (District Court Document 158-15, pg. 14). |
| 10/19/06 – 10/20/06 | McDonald and Crocker both attended depositions.  It is the Defendants contention that McDonald was the only one that participated in the deposition and therefore at least 5 hours should be disallowed.  (District Court Document 158-15, pg. 18). |
| 2/4/07 – 2/9/07 | McDonald, Sells, O'Connor (McDonald's paralegal), and Crocker attended the trial.  Crocker did not examine a witness.  It is the Defendants' contention that therefore, at least 40 hours should be disallowed for the trial and at least 6 hours for travel time should be disallowed.  (District Court Document 158-15, pgs. 25-26, 27). |
| 2/11/07 – 2/15/07 | McDonald, Sells, O'Connor (McDonald's paralegal), and Baldwin attended the trial.  Baldwin did not examine a witness.  It is the Defendants' contention that therefore, at least 32 hours should be disallowed for trial and at least 2.6 hours for travel time should be disallowed.  (District Court |

|  | Document 158-15, pgs. 26-27). |
|---|---|
| 5/11/10 | McDonald, Baldwin, and Millard all conferenced with the Plaintiffs.  It is the Defendants' contention that Mr. McDonald was lead counsel and therefore, the other two attorneys did not need to be present and therefore, at least 4.5 hours should be disallowed.  (District Court Document 158-15, pg. 32). |
| 5/17/10 | McDonald, Baldwin, and Millard all conferenced with the Plaintiffs.  It is the Defendants' contention that Mr. McDonald was lead counsel and therefore, the other two attorneys did not need to be present and therefore, at least 4.3 hours should be disallowed.  (District Court Document 158-15, pg. 33). |
| 6/1/10 | McDonald, Baldwin, and Millard all conferenced with the Plaintiffs.  It is the Defendants' contention that Mr. McDonald was lead counsel and therefore, the other two attorneys did not need to be present and therefore, at least 3 hours should be disallowed.  (District Court Document 158-15, pg. 34). |
| 6/2/10 | Baldwin and Crocker both conferenced with the Plaintiffs.  It is the Defendants' contention that one attorney's presence is sufficient and therefore, at least 3 hours should be disallowed.  (District Court Document 158-15, pg. 34). |
| 7/7/10 | McDonald, Crocker, and Millard all conferenced with the Plaintiffs.  It is the Defendants' contention that Mr. McDonald was lead counsel and therefore, the other two attorneys did not need to be present and therefore, at least 6 hours should be disallowed.  (District Court Document 158-15, pg. 36). |
| 7/8/10 | McDonald, Baldwin, and Crocker have a conference. It is the Defendants' contention McDonald could have conferenced with either Baldwin or Crocker and that both attorneys presence is duplicative and therefore, at least 2 hours should be disallowed. (District Court Document 158-15, pg. 37). |
| 7/9/10 | Baldwin, Crocker, and Millard all conferenced with the Plaintiffs.  It is the Defendants' contention |

|  | that one attorney's presence is sufficient and therefore, at least 5 hours should be disallowed. (District Court Document 158-15, pg. 37). |
|---|---|
| 7/23/10; 7/26/10 – 7/28/10 | McDonald, Crocker, Millard, and Baldwin all prepared for the hearing regarding the remedial plan, traveled for the same, and attended the hearing.  It is the Defendants' contention that McDonald is the lead counsel and presented the argument at the hearing and therefore, the time spent preparing for, traveling to, and attending the hearing by Crocker, Millard, and Baldwin was duplicative and unnecessary.  Therefore, at least 36.8 hours should be disallowed as well as $271.00 for reimbursed travel.  (District Court Document 158-15, pg. 39-40). |

b. Travel Time

Since some of Plaintiffs' counsel was out of state, there was a large amount of time devoted to traveling and the Defendants ask that the court reduce the hourly rate billed for travel time by at least half.  The Plaintiffs' attorneys do not allege in their billing statements that they performed any work on the case while traveling and as such, the time spent traveling was otherwise unproductive and the Court has discretion to apply a reduced rate.  *Anchondo v. Anderson, Crenshaw & Associates, LLC*, 616 F.3d 1098, 1105-1106 (10th Cir. 2010).  See also: *Brigham Young University v. Pfizer, Inc.*, 262 F.R.D. 637 (D. Utah 2009); *Champion v. ADT Sec. Services, Inc.*, 2010 WL 4736908 (E.D. Tex. 2010); *Watkins v. Fordice*, 7 F.3d 453

11

(5th Cir. 1993).  Additionally, Baldwin and Crocker, in their billing statement (District Court Document 158-15) state that travel time is billed at ½ time.  However, when they figured it up on their billing sheet, they charged the full rate. (District Court Document 158-15, page 20).

Mr. McDonald spent 76.25 hours traveling.  Mr. Sells spent 15 hours traveling.  Ms. O'Connor spent 15 hours traveling.  Ms. Bell spent 35.67 hours traveling.  Baldwin, Crocker, and Millard spent 29.6 hours traveling but the Defendants are asking the Court to exclude all but 6 hours of that traveling time, as noted above.  The Defendants ask that the Court bill the traveling time at a reduced rate.

c. Clerical work

Plaintiffs' attorneys are requesting fees for time spent on activities that appear could have been easily delegable to paralegals or non-professional assistance.

> [I]n determining the number of hours "reasonably expended" by counsel in the litigation, the court should ensure that counsel exercises "billing judgment." In so doing, the court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel "on tasks that are easily delegable to non-professional assistance." *Cf. Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 942 (3d Cir.1995) (reasoning that legal service

12

rates are not applicable when an attorney provides services that could have been easily delegated to a non-professional).

*Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999).  The Defendants ask that the Court either disallow the hours or bill them at a lesser rate.

Mr. McDonald transcribed notes of interviews on June 21 through June 23, 2005; April 18 through April 20, 2006; May 2 through May 4, 2006; July 5 through July 6, 2006; July 10, 2006; July 27, 2006; July 30, 2006; August 4, 2006; August 8 through August 10, 2006; August 30 through August 31, 2006; and October 23 through October 24, 2006.  The total amount of hours spent transcribing notes is approximately 56.5.  Additionally, on July 20, 2006, Ms. Bell spent .5 hours typing up witness interview notes. The Defendants contend that these activities could have been delegated to a non-professional or paralegal and should be billed at a lesser rate.

Mr. McDonald also spent one hour gathering files and case material on July 27, 2006.  Once again, the Defendants contend that this could have been delegated to a non-professional or paralegal and should be billed at a lesser rate.

Mr. McDonald also spent time organizing files on September 26, 2006.  The Defendants approximate that this took at least one hour of the 1.75 hours written down for that day and ask that these hours be disallowed, as time spent organizing a file is just part of the everyday operation of a law firm.

d. Excessive hours

The Defendants also assert that some of the hours claimed are excessive and should be reduced.  Mr. McDonald claims that on April 11, 2005, he spent 1.25 hours sending voting returns to Cole.  On October 7, 2005, he spent 2.75 hours on the final preparation of papers, he however is vague on what exactly he was working on.  On January 5, 2006, he spent 1.5 hours filing and serving disclosures and the proposed scheduling order.  On April 30, 2010, Mr. McDonald spent 1.75 hours sending emails to Plaintiffs and others.  The Defendants contend that the hours spent on these tasks are excessive.

On January 30, 2007, Ms. Crocker spent 6.5 hours reviewing an Order regarding judicial notice (3 pages) an order regarding striking Cole's supplement (5 pages) and coordinating scheduling of witnesses.  The Defendants contend that 6.5 hours is excessive to review 8 pages of documents and schedule witnesses.

14

On January 31, 2007, Ms. Crocker spent 5 hours scheduling witnesses, reviewing an opposition to a motion in limine (16 pages), reviewing and objection to order striking Cole's report (11 pages), reviewing Defendants' response to the objection (4 pages), reviewing the Defendants' exhibit list (3 pages), reviewing the Defendants' objection to Plaintiffs' exhibit list (7 pages), reviewing Defendants' objection to Plaintiff's deposition exhibits (4 pages), and made a phone call to the court reporter regarding the expert depositions.  The Defendants contend that 5 hours is excessive to review 41 pages of documentation, schedule witnesses and speak with a court reporter.

On May 14 through May 15, 2007, Ms. Crocker spent 3.7 hours and on May 8 and May 17, 2007, Mr. Baldwin spent 3.9 hours reviewing the draft findings of fact and conclusions of law, which was 26 pages.  The Defendants contend that 7.6 hours to review a 26 page document that was prepared by Mr. McDonald is excessive.

Finally, in June 2010, Mr. McDonald spent 43.35 hours researching and drafting Plaintiffs' Response to Defendants' Proposed Remedial Plan.  The Response is 18 pages and there are

10 pages of exhibits attached.  The Defendants do not dispute the time that Mr. McDonald spent on the Response.  However, the Defendants do dispute the additional 30 hours that Mr. Baldwin, Ms. Crocker, and Ms. Millard spent researching and reviewing the Response and believe that there time should either be disallowed as duplicative or reduced significantly.  As the Plaintiffs' attorneys have stated themselves, Mr. McDonald is a specialist in this field and has done numerous of these types of cases.  To think that he needed other counsel to do an additional 30 hours of researching and reviewing is absurd.

e. Miscalculation

The Defendants found a discrepancy in the amount of fees and expenses requested by Baldwin, Crocker & Rudd, P.C.  In the Plaintiffs' Motion for Costs and Attorney's Fees, the Plaintiffs listed what each attorney was claiming.  If you add up the amounts, Andrew Baldwin $29.350.00, Berthenia Crocker $52,400.00, Janet Millard $18,875.00, Christopher Schneider $273.00, Roselda Jones $924.00, and Kathryn Sanderson $36 the total comes to $101,858.  (Document 158, pg.2).  However, if you look at Baldwin, Crocker & Rudd, P.C.'s itemized monthly statement, it shows that the amount due is $100,183.95.

(Document 158-15, pg. 6).  Further, included in their monthly
itemized statement, and the $100,183.95 figure, they also
included their expenses, that they also list separately as
unreimbursed expenses and ask to be awarded those expenses.
(Document 158-15, pg. 43).  Additionally, they fail to include
on their unreimbursed expenses sheet a payment made to them by
the ACLU on August 22, 2006 for $255.79.  (Document 158-15, pg.
43).  Because of the double billing of the expenses and the
discrepancies in time, the Defendants have thoroughly reviewed
Baldwin, Crocker & Rudd, P.C.'s monthly statement and have
determined that the number of hours worked were: Andrew
Baldwin's hours are 116.5, Berthenia Crocker's hours are 207.6,
Janet Millard's hours are 65.4, Christopher Schnieder's hours
are 1.3, Roselda Jones' hours are 17, and Kathryn Sanderson's
hours are .6.  Additionally, the Defendants put together a sheet
noting all of the expenses, including reimbursements by the
ACLU, being claimed by Baldwin and Crocker.  (Exhibit A).  The
Defendants find it curious that almost 39% of the time claimed
by Baldwin, Crocker, and Millard came after the judgment in
Plaintiffs' favor on April 29, 2010, and those 39% of hours were
claimed within less than four months.  Defendants still contend,

17

as noted above, that not all of the time submitted by Crocker, Baldwin, and Millard is compensable.

### III. Expenses & Costs

The Defendants do not argue that the Plaintiffs are entitled to reasonable expenses and costs.  However, the Defendants do argue with some of the expenses that the Plaintiffs are claiming.  First, as noted above under duplicative time, Baldwin, Crocker, and Millard should not be compensated for attending the hearing in July 2010 regarding the remedial plan as it was duplicative.  Since Baldwin, Crocker, and Millard should not be allowed to claim their time, the July 31, 2010 expense, reimbursement for travel, of $250.00 should also be disallowed.  (District Court Document 158-15, pg. 40). Additionally, as argued above, it was duplicative for Baldwin or Crocker to attend the trial in February 2007.  As it was duplicative and the Defendants are asking that their time be disallowed, the Defendants also contend that McDonald's February 20, 2007, expense for the reimbursement of Baldwin's and Crocker's travel expenses for the trial of $1,184.53 should be disallowed.  (District Court Document 158-8, pg. 7).

The Defendants also request that the expenses for office supplies on February 28, 2007, for $112.05 and February 4, 2007, for $91.10 be disallowed.  (District Court Document 158-8, pgs. 7, 9).  These are office supplies and as such are part of the general office overhead and should be disallowed.  *Wilder-Davis v. Board of Com'rs of Johnson County, KS*, 2000 WL 1466691 (D.Kan. 2000); *Tatum v. City of New York*, 2010 WL 334975 (S.D.N.Y. 2010).

## CONCLUSION

The award of a prevailing party's **reasonable attorneys' fees and costs** is a policy reflection of this Country's commitment to the enforcement of its citizen's constitutional rights and, as such, should be respected.  But the spirit of the law should also be upheld.  The award of costs and fees should not be a windfall, but a reflection of a policy that all citizens should be entitled to competent representation when asserting and protecting their rights and that if they prevail they should be awarded the costs and expenses related to their representation.  Prevailing in such litigation should not, however, be treated as the functional equivalent of a winning lottery ticket.  Awarding almost $1,000,000.00 in attorneys'

fees and costs in this case would be inappropriate, unfair, and punitive.

Wherefore, the Defendants ask the Court to review the billable hours and expenses submitted by the Plaintiffs' attorneys and reduce the fees and expenses as requested by the Defendants.

Respectfully submitted this 8th day of December 2010.

Fremont County, Wyoming, *et al.*, Defendants

By:  /s/ Richard Rideout
     RICHARD RIDEOUT, ESQ.
     Law Offices of Richard Rideout, PC
     211 West 19th Street, Suite 100
     P.O. Box 389
     Cheyenne, Wyoming  82003-0389
     307 632 1901
     307 432 7522 fax

     ATTORNEY FOR THE DEFENDANTS

**CERTIFICATE OF SERVICE**

I, RICHARD RIDEOUT, do hereby certify that a true and correct copy of the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR COSTS AND ATTORNEY'S FEES** was served by electronic filing, this 8th day of December 2010, addressed as follows:

Laughlin McDonald
Bryan Sells
American Civil Liberties Union Foundation, Inc.
2725 Harris Tower
233 Peachtree Street
Atlanta, Georgia  30303
404.523.2721
404.653.0331 fax

Andrew W. Baldwin
Berthenia Crocker
Baldwin & Crocker, P.C.
P.O. Box 1229
Lander, Wyoming  82520-1229
307.332.3385
307.332.2507 fax

/s/ Richard Rideout
RICHARD RIDEOUT, ESQ.