**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2013 SEP 20 PM 12 33
STEPHAN HARRIS, CLERK
CHEYENNE

JAMES E. LARGE, et al.,

Plaintiffs,

vs.

FREMONT COUNTY, WYOMING, et al.,

Defendants.

Case No. 05-CV-0270

**ORDER AWARDING COSTS AND ATTORNEYS' FEES**

The plaintiffs' motions for costs and attorney's fees are before the Court. The defendants have opposed the request for costs and attorney's fees, objecting to the hourly rates charged by the attorneys and to some of the actual time and expenses requested. Having reviewed the plaintiffs' motion and the further supplemental motion for costs and attorney's fees for time spent on or after August 12, 2010, including time spent on appeal, and the defendants' opposition to the fee applications, the Court finds that plaintiffs should be awarded their attorney's fees in full, with minor adjustments, as well as their costs and expenses.

Plaintiffs seek an award of attorney's fees in the total amount of $818,519.25 ($732,824.25 for services provided prior to August 12, 2010 plus $85,695.00 for services provided on or after August 12, 2010). They seek an award for paralegal fees in the amount of $41,071.50. Additionally, they seek an award of expenses in the total amount of $110,085.94 ($107,595.55 prior to August 12, 2010 and $2,490.39 on or after August 12, 2010). The plaintiffs ask for a total award of attorney's

fees, paralegal fees, and expenses in the amount of $969,676.69.

The plaintiffs are prevailing parties.   42 U.S.C. §§ 1973l(e) and 1988 provide that a prevailing party may recover attorney's fees and costs in an action or proceeding to enforce civil rights statutes, including voting rights statutes and the voting guarantees of the Fourteenth and Fifteenth Amendments.[1]   There is no dispute that the attorneys here should be awarded reasonable attorneys' fees for their work in this § 2 dilution of minority voting rights case.   The lodestar under federal fee-shifting statutes is calculated by multiplying the number of hours worked by the prevailing hourly rates, which may be increased or enhanced in rare and exceptional circumstances. The Supreme Court has stated that the lodestar approach in determining reasonable fees has become the "'guiding light of our fee-shifting jurisprudence.'" *Perdue v. Kenny A.*, 559 U.S. 542, 551-552, 130 S.Ct. 1662, 1672  (2010) (quoting *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 1671 (1973), appeal after remand, 540 F.2d 102 (1976), in turn quoting *Burlington v. Dague*, 505 U.S. 557, 568, 112 S.Ct. 2638 (1992)).   The lodestar method looks to prevailing market rates in the relevant community, and produces an award that "*roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* The lodestar method is also readily administrable, objective and "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.*

In *Perdue*, the Supreme Court instructs that there are six important rules pertinent to consideration of federal fee-shifting statutes. (1) A reasonable fee is a fee that is sufficient to induce

---

[1]"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555, 84 S.Ct. 1362 (1964).

a capable attorney to undertake the representation of a meritorious civil rights case. The fee should be adequate to attract competent counsel, but does not provide a form of economic relief to improve the financial lot of attorneys. (2) There is a strong presumption that the lodestar method is sufficient to achieve this objective. (3) Enhancements of a lodestar amount may be awarded in rare and exceptional circumstances. (4) The lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee and an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. (5) The burden of proving an enhancement is necessary is to be borne by the fee applicant. (6) A fee applicant seeking an enhancement must produce specific evidence that supports the enhanced award. *Id.* at 1672-1673. Additionally, the Court is reminded that the attorney's fee request should not result in a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941 (1983).

The *Perdue* Court also noted that the method described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), gave very little actual guidance to district courts in setting fees by reference to a series of sometimes subjective factors, and placed unlimited discretion in trial judges and produced disparate results.

> These [*Johnson*] factors were: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley v. Eckerhart,* 461 U.S. 424, 430, n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

*Perdue v. Kenny A.*, 130 S.Ct. at 1672, n.4. Again, the Court reminded that the lodestar is the guiding light for fee-shifting jurisprudence. *Id.* In *Anchondo v. Anderson, Crewnshaw & Associates,*

616 F.3d 1098, 1104 (10th Cir. 2010), the Tenth Circuit wrote, particularly in light of the Supreme Court's *Perdue* decision, that the lodestar determination is primary and the propriety of that determination is not automatically called into doubt merely because the trial court does not expressly discuss the *Johnson* factors.

With these basic principles guiding the decision as to reasonable attorney's fees, the following findings are made.

Defendants have asserted that the hourly rates requested by ACLU counsel, including attorneys McDonald, Sells, and Bell-Platts, are not consistent with the rates prevailing in the local community and that the rates charged by the out-of-town attorneys are not justified in this case. In support of their position, the defendants have offered the Declaration of John B. "Jack" Speight. Mr. Speight, an attorney who retired from private practice in August of 2010, opines that he is familiar with hourly rates charged by Wyoming counsel and they would range between $250.00 to $300.00 per hour for this type of complex and difficult federal work. He also opines that there are competent counsel in Wyoming capable of successfully handling litigation such as this, naming specifically Steven F. Freudenthal and the late Ford Bussart as individuals who "would have been able to represent the Plaintiffs affectively [sic] in this matter."[2] Speight Declaration, ¶ 4. The Declaration is not particularly helpful to the Court in resolving this question. It does not demonstrate the competency of these fine, or other, Wyoming attorneys to handle this § 2 litigation or their

---

[2]The Court is familiar with the *Gorin v. Karpan* cases, 775 F.Supp. 1430 (Wyo. 1991) and 788 F.Supp. 1199 (Wyo. 1992). Mr. Speight suggests that counsel in that case "would have been able to represent the Plaintiffs' affectively [sic] in this matter." Docket Entry 173, Speight Declaration. The issues presented in *Gorin* are easily distinguishable in that they may be characterized as political; here, the purpose of the litigation was to seek justice for people who have historically been marginalized and as a result, their most valuable voting rights have been diminished. This case was far more thorny and complex.

willingness and ability to invest the necessary time and financial resources to handle this unique and complex case.

The position advocated by the defendants is that the appropriate attorney's fee yardstick is limited to that provided by attorneys in the Wyoming area, presumably in the Fremont County area and/or Casper area, and that this also defines the relevant community to be used in making that determination. Defendants have also argued that plaintiffs have failed to make a showing that they made a diligent good faith effort to find local counsel. Plaintiffs disagree and urge the Court to find that the out-of- town rates are warranted and representation of the plaintiffs by these attorneys was entirely reasonable.

None of the defendants' arguments are persuasive. In support of the fee application, the Declaration of Gary Collins, one of the plaintiffs in this case, has been submitted. Mr. Collins states the plaintiffs did not have financial resources to hire counsel to represent them in this minority vote dilution case. The plaintiffs were not aware of local or in-state attorneys who had filed or had shown an interest in filing such a case on behalf of American Indians. The plaintiffs requested the ACLU Voting Rights Project to represent them because they knew it had special expertise and had represented American Indians in numerous voting rights cases throughout the west. The ACLU accepted this request for representation. As the Declaration of Attorney McDonald (Docket Entry 158) explains, plaintiffs could not hire a private attorney and knew of none in Fremont County or Wyoming who had done this type of voting rights litigation or who would have represented them on a pro bono basis and be willing to shoulder the costs and expenses over an extended period of time. Simply put, there was no one in Fremont County competent to lead, manage, and finance the plaintiffs' case. Defendants provide nothing persuasive to the contrary. The plaintiffs' attorneys in

this case possessed particular expertise with this type of litigation and provided legal services not available in the market in Fremont County.[3]

The ACLU Voting Rights Project, directed by Attorney McDonald, is a private charitable civil rights legal organization accepting cases involving constitutional and civil rights of minority and other persons on a non-fee generating basis. These attorneys work without a fee arrangement with the clients. The Voting Rights Project depends upon court awards of attorney's fees for a percentage of its budget. His Declaration discloses his extensive experience and expertise in the voting rights area. In addition to litigation, he has written extensively on voting rights and has testified before Congress on voting rights matters. Docket Entry 158, McDonald Declaration.

In 1994, this Court considered the circumstances that might warrant an award of attorney's fees based upon out-of-town rates. Noting that other courts have established a number of criteria, this Court found those standards useful. Factors considered included whether the case required a specialized expertise not found in the local market, the case required or could have required significant financial resources, the case raised unpopular issues, if it was reasonable for the clients to look to out-of-town counsel because attorneys in the community have not filed, and have shown no interest in filing, such litigation. *Kersh v. Board of County Commissioners of Natrona County, Wyoming*, 851 F.Supp. 1541, 1544 (D.Wyo. 1994). These factors are instructive. Considering those factors, it was reasonable to use an out-of-town rate to calculate attorneys' fee awards in this case.

Additionally, more recent cases have considered the usefulness of a simple geographic forum

---

[3]The plaintiffs have referred to the Federal Judicial Center's 2003-2004 District Court Case Weighting Study, Table 1, p. 5, as evidence that voting rights cases were among the top five most complex cases. Excerpts are attached hereto as Appendix A. There is little doubt in the Court's mind that these § 2 cases are complex, time consuming, expensive and important.

rule. *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany and Albany County Board of Elections*, 522 F.3d 182 (2d Cir. 2008), placed the burden on the party wishing the district to use a higher rate to demonstrate that retention of an out-of district attorney was reasonable under the circumstances. *Arbor Hill* did refer to the *Johnson* factors, but also noted that many of them are subsumed within the initial calculation of the lodestar. That court allowed the district court to adjust a base hourly rate to account for a plaintiff's decision to retain out-of-district counsel. It hit the nail on the head when it stated:

> Moreover, this dispute concerning the "forum rule" is but a symptom of a more serious illness: Our fee-setting jurisprudence has become needlessly confused—it has come untethered from the free market it is meant to approximate. We therefore suggest that the district court consider, in setting the reasonable hourly rate it uses to calculate the "lodestar," what a reasonable, paying client would be willing to pay, not just in deciding whether to use an out-of-district hourly rate in its fee calculation. A plaintiff bringing suit under the Voting Rights Act, pursuant to which fees can be recovered from the other side, has little incentive to negotiate a rate structure with his attorney prior to the litigation; the district court must act later to ensure that the attorney does not recoup fees that the market would not otherwise bear. Indeed, the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively.

*Arbor Hill*, 522 F.3d at 184. There is nothing to support the notion that a reasonable paying client cannot properly look outside the local area to find counsel that might litigate the case effectively and successfully. Nothing requires civil rights litigants to select the nearest or cheapest attorney. In this case, the attorneys representing plaintiffs did accept the case on a pro bono basis; the plaintiffs were unable to pay any attorney to pursue this § 2 Voting Rights Act litigation; counsel was willing to commit to the time required to pursue this litigation and to shoulder the burden of expenses that might be incurred and necessary to permit this matter to proceed.

The district court's assessment of the reasonableness of a prevailing party's decision to retain

out-of-district counsel should be considered in setting the hourly rate. The Supreme Court has emphasized that it is important to use the "market rate" in calculating attorney's fees. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541 (1984). In circumstances where it is reasonable to retain attorneys from other communities, the rates in those communities may also be considered. See e.g., *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Limited availability of qualified attorneys competent to prosecute a particular case may justify a higher fee. As the *Arbor Hill* court stated, it is also important to consider:

> Third and finally, our holding honors the Supreme Court's emphasis on the need to use the approximate market rate for an attorney's services in calculating the presumptively reasonable fee. See *Jenkins*, 491 U.S. at 283, 109 S.Ct. 2463. The legal communities of today are increasingly interconnected. To define markets simply by geography is too simplistic. Sometimes, legal markets may be defined by practice area. See *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 80 (2d Cir. 2005) ("So long as the law provides for or permits fee awards based on geographic markets for services, a lawyer may be paid at different rates for otherwise indistinguishable services."). On the other hand, many cases (including many voting rights cases) are intrinsically local, and the relevant legal market may be coextensive with or smaller than the district itself. By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services. See *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 744 (7th Cir. 2003) ("The realities of the legal community today mean that though some attorney probably could have represented [the plaintiff], one factor or another prevented them from taking the case when he needed a lawyer."). Not incidentally, a reasonable, paying client might consider whether a lawyer is willing to offer his services in whole or in part pro bono, or to promote the lawyer's own reputational or societal goals. Indeed, by focusing on the hourly rate at which a client who wished to pay no more than necessary would be willing to compensate his attorney, the district court can enforce market discipline, approximating the negotiation that might ensue were the client actually required to pay the attorney's fees.
>
> In occasionally permitting a deviation from forum rates in setting the rate that will yield the presumptively reasonable fee, we have in mind no substantial change in circuit law; where circumstances have warranted it, we have not insisted on strict adherence to the forum rule. In *Polk*, we approved the use of an out-of-district hourly rate. 722 F.2d at 25 (considering whether "[c]ounsel might....have expected plaintiff's claim to be adjudicated in the Southern District"). In *Agent Orange*,

> although we emphasized that district courts should generally use "the hourly rates employed in the district in which the reviewing court sits" in calculating the presumptively reasonable fee, 818 F.2d at 232, we again upheld a district court's decision to use different rates. And since *Polk* and *Agent Orange*, we have urged district courts where appropriate to employ out-of-district rates in calculating the fee due. See, e.g., *New York City Dep't of Educ.*, 407 F.3d at 81 & n. 17 ("[T]here is good reason for a district court not be wed to the rates in its own community. If they are lower than those in another district, skilled lawyers from such other district will be dissuaded from taking meritorious cases in the district with lower rates.").

This type of litigation is unique and requires expertise not readily available in the Wyoming market, including Fremont County, Wyoming. The Court agrees that there are many, many competent attorneys in Wyoming who might have been willing to delve into these thorny legal issues, but nothing now before the Court indicates that any attorney providing legal services to the communities in Fremont County, or indeed, the state of Wyoming, possessed the particular specialised expertise to orchestrate an efficient and effective § 2 minority vote dilution case. Nothing suggests that any attorney in the local area came forward to provide these special legal services or was willing to carry the laboring oar on this expensive, time consuming and long-lived litigation on a pro bono basis. This case was originally filed in 2005; the case was affirmed on appeal in 2012.

It is not unreasonable to view this more globally or rather, as an area where the market reaches far beyond the confines of the state of Wyoming. As the court in *Communities for Equity v. Michigan High School Athletic Ass'n*, 2008 WL 906031, *4 (W.D. Mich. 2008), stated:

> Reasonable hourly rates typically equate to the customary rates charged by local attorneys of comparable experience and expertise. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). Certain cases create an exception to this general rule and allow higher rates to be recouped by an "out-of-town specialist." *Id.* Regarding this exception, the Sixth Circuit has counseled:
>
> > When fees are sought for an out-of-town specialist, courts must

> determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983). A corollary of this rule is that judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate. *Chrapliwy*, 670 F.2d at 769.

This is a case where fees sought by out-of-state attorneys should be awarded at the rates requested. Based upon a review of all the materials in this case and its own familiarity with this litigation, the Court finds that it was reasonable for plaintiffs here to seek representation in a larger geographical area and engage the legal services of experienced out-of-state counsel, particularly attorneys with experience and expertise in the voting rights area of the law. Counsel were effective and achieved all of the results sought in this hard fought case.

The emphatic complaint here is directed toward the hourly rates charged by counsel for the prevailing plaintiffs, with some additional complaints about excessive time, duplication of effort and questioning a few expenses. The fee application discloses that Attorney McDonald's hourly rate is $425.00; the hourly rate for attorneys Sells and Bell-Platts is $300; all of the attorneys at the Baldwin, Crocker & Rudd firm charge $250 per hour (with the exception of charges for Attorney Schneider who provided 1.3 hours of service at the rate of $210.00 per hour). The Court disagrees with the defendants' position that the fees charged are not reasonable.

The Court finds that the rates charged by attorneys McDonald, Sells and Bell-Platts are reasonable and should be awarded at the rates requested. Plaintiffs offer voluminous materials disclosing that legal services provided in out-of-town counsel's legal community range widely. The

fees charged here are well within the range of the rates typically charged, exemplified by those submissions. The average billing rate in the Atlanta area ranged from $476 per hour to $900 per hour for partners; associate rates ranged from $302 to $655 per hour. See, by way of example, the Declaration of Laughlin McDonald. Even in Wyoming, 3.2% of responding attorneys charged more than $300 per hour. Wyoming State Bar, 2009 Bar Member Survey. Likewise, the hourly rates requested by the members of the Baldwin, Crocker & Rudd, PC firm in Lander, Wyoming are well within the rates charged by Wyoming attorneys. The Wyoming State Bar, 2009 Bar Member Survey. shows that 25.6% of responding attorneys charge from $151-$200; 14.4% charge $201-$300 per hour. Attorney McDonald will be awarded fees calculated at the hourly rate of $425 per hour; Attorneys Sells and Bell-Platts at the rate of $300 per hour; and Attorneys Baldwin, Crocker and Millard at the rate of $250 per hour and Attorney Schneider at the rate of $210 per hour.

Defendants object to the time spent by the various attorneys, apparently contending that counsels' work was duplicative and that there was no need for multiple attorneys to work on this case. They complain that more than one attorney was often present during depositions, interviews and conferences with clients or hearings before the Court. They complain that multiple attorneys reviewed documents. Again, the Court disagrees. This was complex litigation. There is no indication that the case was overstaffed or over-lawyered. The attorneys collaborated on issues of great importance over a significant period of time. Suggesting that counsel should not collaborate or become familiar with the case and all supporting documents and materials is absurd in a case like this. By Local Rule, out-of-state counsel must associate with local counsel before being admitted pro hac vice to appear in this Court. Local counsel must be prepared as fully as counsel who have been admitted pro hac vice. By Local Rule, local counsel must be present in court, unless excused,

and shall have full authority to act for and on behalf of the client in all matters. Local counsel was never excused from participating actively in this matter.

The defendants contend that because multiple attorneys participated in this litigation, their efforts were duplicative and unnecessary. The complexity of this case justifies collaboration by all counsel on matters of great importance and difficulty and facilitated distribution of tasks among attorneys. Local counsel had contributed unique information, perspective and efforts by virtue of their knowledge of the greater Fremont County community. They had particular expertise and knowledge of the Native American community residing on the Wind River Indian Reservation. Intra- and inter-office conferences with co-counsel are certainly acceptable so long as not excessive. In this Court's opinion, the activities undertaken were proper and not excessive. No fee reduction is required on this basis. The record reflects efficient cooperation and allocation of responsibilities between all counsel throughout their collaboration on the case. There is nothing unreasonable about a client having multiple attorneys, and their efforts should be compensated in full. Deciding to forego collaboration might even be considered questionable judgment in this particular case, offering another reason to handle the case as counsel chose to do.

The billing statements provided by all counsel clearly disclose activities performed, who performed the services, time spent and rates charged. Imprecise or block billing was not employed; none of the billing documentation camouflages time spent performing excessive work nor has the Court been hindered in its review of work performed during the course of representation. See *BP Pipelines (North America), Inc. v. C.D. Brown Const., Inc.*, 473 Fed. Appx, 818, 835 (10th Cir. 2012). The billing records are sufficiently detailed to permit the Court to determine when work was performed, the amount, subject matter, and purpose of the hours expended.

Defendants object to an award of fees for legislative activities. Plaintiffs do not dispute this contention at all, although they were unable to locate where billings had been made for such services. The Court has reviewed all of the billing statements in this matter and found that attorney McDonald's billing records included a total of 6.85 hours in late September and October of 2010 that appear to be attributable to legislative activities in Wyoming. These hours will be disallowed, for a reduction in the fees requested in the amount of $2,911.25 (6.85 hours X $425/hour).

Defendants have complained that certain tasks should have been performed by paralegals or perhaps other office staff rather than the attorneys. The Court, again, disagrees. Upon review of the billing statements, it is clear that the tasks complained of were not ordinary clerical tasks and were important to the legal analysis and actual attorney preparation. Some line items do indicate that notes of interviews were transcribed or files were organized. The Court is satisfied, however, with the representation of counsel that these entries are not merely clerical and served to memorialize the attorney's impressions, sought to organize information obtained and shape how the case might be handled. The time was necessary to prepare and coordinate the litigation by counsel and was reasonable.

The Court finds that paralegal services were provided by exceptionally qualified individuals and should be compensated at the requested $85 hourly rate. It has already been determined that out-of-state counsel may be compensated at rates over the local Fremont County billing rates for legal services. The same reasoning obtains with respect to paralegal services. The Court notes that it has frequently observed Wyoming law firms charge $60 or more for paralegal services. The $85 rate sought in this case is not unreasonable. It is probable this case could not have been litigated as successfully or efficiently without the paralegal services. Paralegal O'Connor has a J.D. and spent

85.5 hours drafting discovery responses, communicating with plaintiffs, witnesses and expert witnesses, compiling exhibits, attending trial and coordinating the appearances of witnesses. Paralegal McBride has a Ph.D. in political science. He spent 386.4 hours working on this case. He researched history of Wyoming and the Wind River Indian Reservation, Wyoming Session Laws and documents in the National Archives and Records Administration in Denver and Washington, reviewed writing of potential expert witnesses and of the defendants' expert witness, county commission minutes and other documents. There is no objection to the claim for paralegal fees. Paralegal time will be compensated in full at the rate of $85 per hour for Katie O'Connor and Fred McBride; $60 per hour for Roselda Jones and Kathryn Sanderson (Baldwin, Crocker & Rudd firm).

As to travel, the Court finds that the defendants' arguments are not persuasive. Upon review, it appears that counsel for plaintiffs did attempt to minimize their travel to and from Wyoming for this litigation. Billing records reflect lead counsel McDonald made merely six trips over a six year period; attorney Sells made one trip; and attorney Bell-Platts traveled twice in 2006. The billing records of the Baldwin, Crocker & Rudd firm reflect that attorney Baldwin charged for travel for two trips, attorney Crocker three trips, attorney Millard for one trip to participate in the remedial hearing. Paralegal O'Connor traveled one time in August of 2006. Given the complexity and longevity of this litigation, it is difficult to conclude that travel was excessive. Defendants offer nothing that convinces the Court all travel should be billed at less than the usual hourly rate. Furthermore, billing judgment was exercised by counsel; certain trips were billed at half the usual hourly rate. The arguments regarding travel will not be belabored further and the charges for travel will be allowed.

Upon defendants' objection, the plaintiffs agree that the Baldwin, Crocker & Rudd fee request will be amended to request total fees in the amount of $100,183.95. The Baldwin, Crocker

& Rudd firm states that its Quickbooks program calculated this amount, although the sum of hours times billable rates totaled $101,858.00. Because of this difference, the firm agreed to reduce their claim by $1,674.05. They agreed to modify their request in response to the defendants' objection.

With respect to costs, the amount requested represents reasonable litigation costs necessarily and reasonably incurred in providing representation to the plaintiffs in this case. The types of costs sought are typically passed on to paying clients. With the small exception of two line items for office supplies (February 28, 2007 -- $112.05 and February 4, 2007 -- $91.10), all costs will be allowed.

Although no enhancement has been requested by plaintiffs, the Court will not adjust the fee award upward or downward under the circumstances of this case. Most, if not all, of the relevant factors outlined in *Perdue v. Kenny A.,* 130 S.Ct. 1662 (2010), have been subsumed in the calculation of the lodestar. No enhancement is warranted. Plaintiffs are entitled to recover costs and expenses, in the amounts set forth below.

It is therefore

**ORDERED** that plaintiffs recover attorneys' and paralegal fees and expenses and costs, (including the amounts sought in the plaintiffs' supplemental fee request) as follows:

**Attorney McDonald**

| | |
|---|---|
| Total hours | 1414.25 |
| X | |
| Hourly rate | $425/hr |
| Subtotal | $601,056.25 |
| Less fees for legislative activities | 6.85 hrs. @ $425/hr <$2911.25> |
| Total fee | **$598,145.00** |

| | |
|---|---|
| **Attorney Sells** | |
| Total hours | 172.6 |
| X | |
| Hourly rate | $300/hr |
| Total fee | **$51,780.00** |
| **Attorney Bell-Platt** | |
| Total hours | 120.7 |
| X | |
| Hourly rate | $300/hr |
| Total fee | **$36,120.00** |
| **Attorney Baldwin** | |
| Total hours | 160.3 |
| X | |
| Hourly rate | $250/hr |
| Total fee | **$40,075.00** |
| **Attorney Crocker** | |
| Total hours | 246.1 |
| X | |
| Hourly rate | $250/hr |
| Total fee | **$61,525.00** |
| **Attorney Millard** | |
| Total hours | 110.4 |
| X | |
| Hourly rate | $250/hr |
| Total fee | **$27,600.00** |
| **Attorney Schneider** | |
| Total hours | 1.3 |
| X | |
| Hourly rate | $210/hr |
| Total fee | **$273.00** |
| **Less adjustment for Baldwin, Crocker & Rudd Quickbooks differential** | **<$1,674.05>** |

**Paralegal O'Connor**

| | |
|---|---|
| Total hours | 85.5 |
| X | |
| Hourly rate | $85/hr |
| Total fee | **$7,267.00** |

**Paralegal McBride**

| | |
|---|---|
| Total hours | 386.4 |
| X | |
| Hourly rate | $85/hr |
| Total fee | **$32,844.00** |

**Paralegal Jones**

| | |
|---|---|
| Total hours | 15.4 |
| X | |
| Hourly rate | $60/hr |
| Total fee | **$924.00** |

**Paralegal Sanderson**

| | |
|---|---|
| Total hours | 0.6 |
| X | |
| Hourly rate | $60/hr |
| Total fee | **$36.00** |

| | |
|---|---|
| **Costs and Expenses** | **$110,085.94** |
| **Less disallowed costs for office supplies** | **<$203.15>** |
| **GRAND TOTAL** | **$964,797.74** |

**Judgment for attorneys' fees and costs will be entered accordingly.**

Dated this 20th day of September 2013.

Alan B. Johnson

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE

# APPENDIX A

# 2003–2004 District Court Case-Weighting Study

## *Final Report to the Subcommittee on Judicial Statistics of the Committee on Judicial Resources of the Judicial Conference of the United States*

*Project Directors*

Patricia Lombard and Carol Krafka

*Federal Judicial Center Project Team Members*

George Cort and Nicholle Reisdorff
Joe Cecil, Meghan Dunn, Jennifer Marsh, Dean Miletich, and David Rauma
Robert Day, Tyeika Hartsfield, and Jeannette Summers

*with assistance from the Administrative Office of the U.S. Courts*

Ellyn Vail and Patrick Walker

Federal Judicial Center 2005

This Federal Judicial Center publication was undertaken in furtherance of the Center's statutory mission to conduct and stimulate research and development for the improvement of judicial administration. The views expressed are those of the authors and not necessarily those of the Federal Judicial Center.

## Table 1: New 2004 District Court Case Weights

| Case Weights for Civil Case Types | | |
|---|---|---|
| **General Category** | **Case Type** | **2004 Study Weight** |
| **Admiralty** | Admiralty | 0.88 |
| **Banking and Finance** | Banking and Finance | 1.17 |
| **Bankruptcy** | Bankruptcy Appeals | 0.57 |
| | Bankruptcy Withdrawals | 0.74 |
| **Civil Rights** | Civil Rights: Employment | 1.67 |
| | Civil Rights: Other | 1.92 |
| | Civil Rights: Voting | 3.86 |
| **Commercial Litigation** | Antitrust | 3.45 |
| | Civil RICO | 4.78 |
| | Interstate Commerce | 0.84 |
| | Other Fraud | 1.70 |
| | SEC, CFTC, and Similar Enforcement Actions (US Plaintiff) | 2.08 |
| | SEC, Commodities, and Stockholder's Suits (Non-US Plaintiff) | 1.93 |
| **Contracts** | Insurance Contracts | 1.41 |
| | Other Contract Actions | 1.22 |
| | Overpayment and Recovery | 0.10 |
| **Forfeiture and Penalty** | Forfeiture and Penalty | 0.42 |
| **Intellectual Property** | Copyright and Trademark | 2.12 |
| | Patent | 4.72 |
| **Labor** | All Other Labor | 1.02 |
| | ERISA | 0.84 |
| **Other Actions** | All Other Actions (Including Local Jurisdiction) | 0.99 |
| | Environmental Matters | 4.79 |
| | Federal Tax Suits | 1.29 |
| | Freedom of Information Act | 3.06 |
| **Prisoner Litigation** | §2254 Habeas Corpus Petitions | 0.54 |
| | §2255 Petitions to Vacate Sentence | 0.32 |
| | Death Penalty Habeas Corpus | 12.89 |
| | Deportation / Immigration | 0.44 |
| | Mandamus | 0.49 |
| | Prisoner Civil Rights / Prison Conditions (Federal) | 0.75 |
| | Prisoner Civil Rights / Prison Conditions (State) | 0.67 |
| **Real and Personal Property** | Foreclosure | 0.32 |
| | Land Condemnation | 0.76 |
| | Other Property Actions (Real or Personal) | 1.17 |
| **Social Security** | Social Security | 0.63 |
| **Torts** | Asbestos | 0.12 |
| | Assault, Libel, and Slander | 1.47 |
| | Federal Employer's Liability | 0.76 |
| | Medical Malpractice | 1.40 |
| | Personal Injury (Excluding Admiralty) | 0.90 |
| | Product Liability (Excluding Admiralty) | 0.61 |

## Table 1: New 2004 District Court Case Weights (continued)

**Case Weights for Criminal Case Types**

| General Category | Case Type | 2004 Study Weight |
|---|---|---|
| **Drug Offenses** | Continuing Criminal Enterprise | 4.36 |
| | Import / Export | 0.61 |
| | Manufacture | 1.12 |
| | Possession | 0.86 |
| | Sell or Distribute | 1.07 |
| **Espionage and Terrorism** | Espionage and Terrorism | 1.08* |
| **Extortion, Threats, and RICO** | All Extortion, Threats, and RICO | 1.89 |
| **Financial Crimes** | All Fraud | 0.97 |
| | Embezzlement, Forgery and Counterfeiting | 0.75 |
| **Firearms** | Firearms | 1.00 |
| **Homicide, Assault, Kidnapping** | Aggravated or Felonious Assault, Kidnapping | 1.34 |
| | Murder, Manslaughter, Homicide | 1.99 |
| **Immigration Offenses** | Alien Smuggling | 0.57 |
| | Other Immigration | 0.47 |
| **Misdemeanor and Petty Offenses** | All Misdemeanor and Petty Offenses | 0.18 |
| **Other Felony Offenses** | All Other Felonies | 1.00 |
| **Robbery, Burglary, Larceny and Theft** | Larceny and Theft | 0.87 |
| | Robbery and Burglary | 0.71 |
| **Sexual Offenses** | Sexual Offenses and Pornography | 1.10 |
| **Supervised Release and Probation Revocation Hearings** | Supervised Release and Probation – Evidentiary Revocation Hearing | 0.22 |
| | Supervised Release and Probation – Non-Evidentiary Revocation Hearing | 0.14 |

* This weight is believed to underestimate the average burden associated with Espionage and Terrorism cases. The weight is based on a small sample (12 cases) that probably does not represent the range of case-processing activity that would be found if a larger sample size that included cases representative of pending and future filings were analyzed. Despite the weight's limitation, the Subcommittee will use the weight as computed until such time as more representative terminations data become available and the weight can be recomputed.